USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-30-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
S.B., by his parents, S.B. and D.B.,                :
                                                    :
                    Plaintiffs,            :   14cv10193
                                                    :
  -against-                                        :   MEMORANDUM & ORDER
                                                    :
THE NEW YORK CITY DEPARTMENT OF                     :
EDUCATION,                                          :
                                                    :
                    Defendant.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
WILLIAM H. PAULEY III, District Judge:

        Plaintiffs S.B. and D.B. bring this action on behalf of their child S.B. against the New York City Department of Education (the "DOE") for relief under the Individuals with Disabilities Education Act ("IDEA"). They seek reversal of the final administrative decision rendered by a New York State Review Officer ("SRO") overturning the decision of an Impartial Hearing Officer ("IHO"). The SRO concluded that the New York City Department of Education ("DOE") offered S.B. a Free Appropriate Public Education ("FAPE"), and that S.B.'s parents were not entitled to reimbursement for his private school tuition for the 2013–14 school year. Both parties move for summary judgment. For the following reasons, Plaintiffs' motion for summary judgment is granted, and the DOE's motion for summary judgment is denied.

## BACKGROUND

        S.B. is approximately eight years old. Diagnosed with autism, he experiences significant delays and defects in language, academics, social interaction, fine and gross motor skills, and sensory regulation. For the 2011–12 school year, S.B. attended a special education preschool class at the Central Park Early Learning Center.

At the start of the 2012–13 school year, S.B's parents grew concerned that their child was regressing, and sought private evaluations to assess S.B.'s educational needs. Those evaluations recommended, inter alia, intensive one-to-one ("1:1") Applied Behavior Analysis ("ABA") instruction, intensive speech and language therapy, and intensive occupational therapy. Thereafter, S.B.'s parents enrolled him in a 1:1 ABA teaching program at the McCarton Center and Children's Academy. The McCarton Center provided S.B. with 5x45 minute individual speech sessions per week, 5x45 minute individual occupational therapy sessions per week and 33.5 hours of ABA instruction per week.

In March 2013, the DOE's Committee on Special Education ("CSE") convened an Individualized Education Program ("IEP") meeting to formulate a program for S.B.'s 2013–14 school year. In the months leading up to that IEP meeting, S.B.'s mother had several discussions with the CSE regarding S.B.'s needs.

S.B.'s mother and father, along with Sarah Kern (the parents' consultant from the NYC Child Study Center), Vinati Pachigar (S.B.'s speech and language therapist), Lely Lei (S.B.'s occupational therapist), Amelia Cogne (S.B.'s ABA teacher), and Dr. Ian Hollander (the district representative) attended the IEP meeting. Following the IEP meeting, the CSE recommended a 6:1:1 special class in a District 75 school beginning on September 2, 2013. It also recommended 5x30 minutes of speech and language therapy, 5x30 minutes of occupational therapy, and 5x30 minutes of physical therapy, with all related services beginning on September 2, 2013. The CSE did not recommend 1:1 ABA instruction.

In June 2013, S.B.'s parents filed a due process complaint, contending that the DOE denied their son a FAPE for the 2013–14 school year. In June 2014, after a six day

hearing, the IHO concluded that the DOE had failed to offer S.B. a FAPE for the 2013–14 school year because, inter alia: (1) the 6:1:1 placement recommendation failed to provide the student with sufficient "attentive individualized support"; (2) the IEP meeting lacked a regular education teacher and an additional parent member; (3) the IEP provided no documentation in support of its recommendation that the student receive related service sessions in 30 minute increments; (4) the IEP did not provide "sensory supports and accommodations"; and (6) the CSE failed to conduct a functional behavioral assessment ("FBA") and develop a behavior intervention plan ("BIP") to manage the student's interfering behaviors. (IHO Decision at 16–23.) The IHO also found that S.B.'s parents' decision to place their son at the McCarton Center and Children's Academy was appropriate, and that equitable considerations supported the parents' requested relief.

In October 2014, the State Review Officer ("SRO") reversed the IHO's finding and concluded that, except for the months of July and August, the DOE had offered a FAPE to S.B. for the 2013–14 school year.[1]

LEGAL STANDARD

Under the IDEA, the district court determines whether the administrative record establishes that there has been compliance with IDEA's processes, and whether the child's educational needs have been appropriately addressed. See Grim v. Rhinebeck Central Sch. Dist., 346 F.3d 377, 380–81 (2d Cir. 2003). Thus, "[t]he role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." C.F. ex rel. R.F. v. New York City

---

[1] Although the March 2013 IEP recommended a twelve month school year starting in July and finishing the following June, the start date for the IEP was September 2013. Defendant is not cross-appealing the SRO's finding that the DOE failed to provide S.B. a FAPE for July and August 2013. Plaintiffs have already been reimbursed for July and August 2013, and this Court considers the program that was to be implemented in September 2013 independently.

3

Dep't of Educ., 746 F.3d 68, 77 (2d Cir. 2014) (internal citations omitted). "While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." T.Y. v. New York City Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009) (citation omitted); see also C.W. v. New York City Dep't of Educ., No. 15-cv-3214, 2016 WL 1230794, at *2 (S.D.N.Y. Mar. 22, 2016).

But judicial deference does not mean that district courts are rubber stamps. "In many determinations made by administrative officers, the district court's analysis will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." M.H. v. New York City Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012). Where, as here, "the decisions of an IHO and a SRO conflict, the Court should generally defer to the SRO's decision, as the 'final decision of the state authorities.'" F.B. v. New York City Dep't of Educ., 923 F. Supp. 2d 570, 578 (S.D.N.Y. 2013) (quoting R.E. v. New York City Dep't. of Educ., 694 F.3d 167, 189 (2d Cir. 2012) (internal citation omitted)). However, where the district court concludes that the SRO's determinations are "insufficiently reasoned to merit that deference, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges." J.W. v.

New York City Dep't of Educ., 95 F. Supp. 3d 592, 601 (S.D.N.Y. 2015) (internal citations omitted). Further, "courts should defer to the IHO's analysis when considering an issue not reached by the SRO." C.F. ex rel. R.F., 746 F.3d at 77 (citation omitted).

## DISCUSSION

Reimbursement for private school tuition is appropriate if the evidence shows "(1) that the proposed IEP was inadequate to afford the child an appropriate public education, and (2) that the private education services obtained by the parents were appropriate to the child's needs." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998) (citing Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 370 (1985)); Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 12–14 (1993)). Parents must also show "that the equities favor them." R.E., 694 F.3d at 185 (citing Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005)).

Courts assess IEPs for procedural and substantive adequacy with a view to ensuring that they are "reasonably calculated to enable the child to receive educational benefits." A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist., 553 F.3d 165, 171 (2d Cir. 2009) (internal quotations and citations omitted). While substantive violations automatically trigger reimbursement, procedural violations only lead to reimbursement if they "significantly impede[] the parents' opportunity to participate in the decision making process" or "cause[] a deprivation of educational benefits." R.E., 694 F.3d at 190 (internal citation omitted).

I.   Substantive Adequacy

Plaintiffs allege that the March 2013 IEP is substantively inadequate because it failed to consider placement in a 1:1 classroom, and only considered a spectrum of placements

5

where the most restrictive was in a 6:1:1 classroom. This, Plaintiffs argue, ignored overwhelming evidence that S.B. needed a 1:1 placement. And educators and therapists familiar with S.B. testified that a 6:1:1 placement, without a dedicated paraprofessional, would be inappropriate for S.B. For example, Megha Aggerwal, an ABA supervisor at the McCarton Center, testified that S.B. worked most effectively in a 1:1 setting, and would not succeed in a 6:1:1 without a paraprofessional. (IHO Hearing Tr. at 332–33.) Even with 1:1 support, Aggerwal testified that S.B.'s autism was so acute that he could only sit still for 2-3 minutes. (See IHO Hearing Tr. at 352.) Vinati Pachigar, a speech pathologist at the McCarton Center, testified that S.B. was not ready for placement in a 6:1:1 class without his own paraprofessional. (IHO Hearing Tr. at 400–01.) Maxine Chess, co-director at the McCarton Center, testified that that a 6:1:1 program would not provide the type of 1:1 support that S.B. needs. (IHO Hearing Tr. at 431-32.) Sarah Kern, program coordinator at NYU Medical Center's Child Study Center, testified that S.B. was not ready for small group instruction and needed 1:1 support in the classroom. (IHO Hearing Tr. at 466, 69-70.) Documentary evidence corroborated testimony of the professionals. For instance, a SEIT Progress Report for S.B. noted that he "benefits from and requires 1:1 support throughout tasks[.] . . . However, the IEP's 6:1:1 program pays no attention to such 1:1 needs." (D-11.)

Though well-reasoned in other respects, the SRO's decision adopts wholesale the testimony of the DOE's sole witness, Dr. Ian Hollander, and fails to address the testimony of the McCarton Center witnesses. Dr. Hollander testified that a 6:1:1 classroom, without a dedicated paraprofessional, was appropriate for S.B. because a larger class did not provide sufficient individualized support, and would lead to S.B.'s distraction, confusion, and over-stimulation.

6

(Hearing Tr. at 225.) But Dr. Hollander's conclusion says nothing about whether a 6:1:1 class was small enough to meet S.B.'s educational needs.

On this point, the IHO's decision was more thorough and better reasoned than the SRO's decision. The IHO found that the DOE failed to carry its burden of showing that the 6:1:1 placement would "provide sufficient support for" S.B. to make educational progress. (IHO Decision at 22.) See C.F., 746 F.3d at 82 (IEP mandating 6:1:1 program substantively inadequate where there was "overwhelming testimony that 1:1 instruction was necessary" for student). And as the IHO pointed out, Dr. Hollander's testimony was contradictory. For example, Dr. Hollander acknowledged that S.B. "won't communicate with others without ongoing attentive individualized support[,]" but never explained how the 6:1:1 program could provide such "individualized support." (IHO Hearing Tr. at 186.)

In short, the SRO's conclusion that S.B. does not require "1:1 support at all times in order to benefit from instruction" is not supported by the weight of the evidence. (SRO Decision at 23.) R.E., 694 F.3d at 193–94 (2d Cir. 2012) ("Because the SRO's conclusion was against the weight of the evidence and thus flawed, deference to it is not warranted. But having reviewed the record, we conclude that the IHO's decision was sufficiently supported, and we therefore defer to the IHO's conclusion that the IEP was not reasonably calculated to create educational benefit for [the student]."). Accordingly, the SRO's decision does not deserve deference. This Court agrees with the well-reasoned determination of the IHO that S.B. requires 1:1 instruction. Because the 6:1:1 class ratio specified in the IEP constitutes a substantive

violation, the DOE denied S.B. a FAPE.[2] While this Court could conclude its analysis here, it moves on to address the procedural challenges for the sake of completeness.

II.     Procedural Adequacy

Unlike substantive violations, procedural violations only entitle parents to reimbursement if such violations "impeded the child's right" to a FAPE, "significantly impeded the parents' opportunity to participate in the decision-making process" or "caused a deprivation of educational benefits." C.F., 746 F.3d at 78–79 (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)). Plaintiffs argue principally that: (1) the DOE failed to allow sufficient parental participation at the IEP meeting; (2) the absence of explicit parent training provisions, cumulatively denied S.B. a FAPE; (3) a Functional Behavioral Assessment ("FBA") should have been conducted, and a Behavior Intervention Plan ("BIP") formulated; and (4) ABA instruction was not offered to S.B. at the DOE's proposed placement school.

Plaintiffs' contention that they were not afforded an adequate opportunity to participate in the March 2013 IEP meeting with the CSE is not supported by the record. As the SRO held, prior to the IEP meeting, the parents provided McCarton Center-generated reports to the DOE for the CSE's review. (IHO Hearing Tr. at 496.) The parents subsequently met with a district representative to discuss those reports (see IHO Hearing Tr. at 495–96, 548–49), and both parents attended the March 2013 IEP meeting and were given the "opportunity to voice concern[s] about anything [the CSE] w[as] discussing" and to provide input. (See IHO Hearing Tr. at 551, 550–52.)

---

[2]     Because S.B. was denied a FAPE in his IEP, this Court does not need to reach the question of the adequacy of the DOE's recommended placement.

8

Additionally, the absence of parent counseling and training pursuant to state regulations "is itself insufficient to establish the denial of a FAPE." See B.K. v. N.Y.C. Dep't of Educ., 12 F. Supp. 3d 343, 367 (E.D.N.Y. 2014). Thus, although the March 2013 IEP failed to prescribe parent counseling and training services mandated by State regulations, that deficiency did not result in a denial of a FAPE.

While the CSE did not conduct an FBA or develop a formal BIP, those omissions do not constitute a procedural violation of the IDEA. As the Second Circuit recognized, the failure to conduct an FBA "does not rise to the level of a denial of a [FAPE] if the IEP adequately identifies the problem behavior and prescribes ways to manage it." R.E., 694 F.3d at 190. Here, the IEP included sufficient information and services to address S.B.'s behavioral needs, and S.B.'s behaviors were adequately described at that meeting. (See SRO Decision at 18.) For instance, the IEP considered S.B.'s sensory seeking tendencies and designed supports to meet those needs to ensure that S.B. would be "engaged and continue to learn." (IHO Hearing Tr. at 298.) The IEP also offered additional strategies to address IEP's behavioral needs and indicated that S.B. benefited from praise, positive reinforcement, redirection, repetition, visual and verbal prompts, and a programmatic and consistently "implemented sensory diet." (IEP at 1–2.) The March 2013 IEP also included a notation that S.B. benefitted from reduced environmental distractions as well as ongoing visual and verbal cues and prompts. (IEP at 2.) See M.H. v. New York City Dept. of Educ., 712 F. Supp. 2d 125, 159 (S.D.N.Y. 2010) (finding that the denial of an FBA did not amount to a denial of a FAPE where "the IEP sets forth the specific problematic behaviors in which [the child] engaged and concludes that those behaviors did not rise to the level of interfering with his learning").

9

Plaintiffs also contend that S.B. was denied a FAPE because he was not offered ABA instruction at the proposed placement. But as a matter of law, an IEP is not required to specify a particular methodology. Rather, teaching methodologies are typically left to the discretion of classroom teachers. See K.L. v. New York City Dep't of Educ., 11 Civ. 3733, 2012 WL 4017822, at *12 (S.D.N.Y. 2012) (noting that it is "well-established that once an IEP satisfies the requirements of the [IDEA], questions of educational methodology may be left to the state to resolve").

Finally, Plaintiffs argument that the "cumulative" effect of these procedural violations resulted in the denial of a FAPE is unpersuasive. Courts routinely reject attempts to stack alleged procedural errors. See, e.g., T.M., 752 F.3d at 170 (finding that a failure to conduct a FBA or prepare a BIP, and a failure to include parent counseling and training in the IEP did not deny the student a FAPE either individually or cumulatively); see also N.S. v. New York City Dept. of Educ., 13 Civ. 7819, 2014 WL 2722967, at *26 (S.D.N.Y. June 16, 2014) (omission from IEP of discussion of parent training a "minor procedural violation.").

III.     Adequacy of Private School Placement and Related Services

Unilateral private placement "is only appropriate if it provides education instruction specifically designed to meet the unique needs of a handicapped child." M.H., 685 F.3d at 246. When parents unilaterally place their child in a private school and make a claim for reimbursement, the burden is on them "to demonstrate that the school in which they have chosen to enroll their child is appropriate." M.H., 685 F.3d at 246. The SRO's decision did not reach this issue. (See SRO Decision at 26 ("Having determined that the evidence in the hearing record does not support the IHO's determination that the district failed to offer the student a FAPE . . . ,

it is not necessary to reach the issue of whether the McCarton Center, in combination with the Children's Center and other related services, constituted an appropriate unilateral placement for the student[.]").) Thus, this Court may consider the IHO's analysis. See C.F., 746 F.3d at 77 ("[C]ourts should defer to the IHO's analysis when considering an issue not reached by the SRO.").

A parents' unilateral placement need not be perfect, but the placement must provide "educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." Frank G. and Dianne G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 365 (2d Cir. 2006). After considering the record, the IHO found that the parents' unilateral placement at the McCarton Center and the Children's Academy, along with the supplemental supports and services offered to S.B., fell within those parameters. The IHO found the evidence about how the McCarton Center and the Children's Academy addressed S.B.'s various needs to be "persuasive and detailed." (IHO Decision at 27) (finding that the McCarton Center and Children's Academy addressed: "improving [S.B's] behavior, communication, language, focus sensory processing, fine motor and gross motor skills, and articulation as well as providing parent training and counseling.") This Court agrees with the well-reasoned determination of the IHO that the parents' unilateral placement was adequate.

IV.     Equitable Considerations

Reimbursement may be reduced or denied "upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii)(ii). The SRO did not address the IHO's findings that the equities favor the

11

Plaintiffs. Accordingly, there is no dispute that the parents cooperated in good faith with the DOE. (See IHO Decision at 26.)

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted, and Defendants' motion for summary judgment is denied. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 14 and 18 and mark this case as closed.

Dated: March 30, 2016
     New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record.*